UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>TASHENA LAVERA CRUMP,<br><br>　　　　　　　　Defendant. | Crim. No. 20-232(31) (JRT/DTS)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR POST-TRIAL RELIEF** |

---

Melinda A. Williams, Harry Jacobs, Matthew S. Ebert, and Garrett S. Fields, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Caitlinrose H. Fisher and Matthew D. Forsgren, **FORSGREN FISHER**, Capella Tower, 225 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Defendant.

A jury convicted Defendant Tashena Crump of wire fraud and conspiracy to commit mail fraud for participating in a far-reaching scheme to fraudulently sell magazine subscriptions. The Court substantially denied Crump's motions for post-trial relief but reserved judgment on potential discovery and *Brady* issues for further factual development. Having now developed a record and reviewed the parties' supplemental briefing, the Court will deny Crump's post-trial motions in full. When Crump requested access to electronic devices seized from her workplace, the government was statutorily and constitutionally required to fulfill that request. But the government only produced a

subset thereof. Nonetheless, the Court finds that the withheld evidence was not material to the outcome at trial.

## BACKGROUND

The Court will not recount the full background of these proceedings or the conduct for which Crump was convicted. *See generally United States v. Miller*, No. 20-232, 2024 WL 2218446 (D. Minn. May 15, 2024) (detailing some of that background). Rather, the Court will focus on the devices that are the subject of this order.

At the outset of these proceedings, law enforcement seized 21 digital devices from Crump's workplace, Readers Club Home Office ("RCHO"). (Decl. Caitlinrose H. Fisher ("June Fisher Decl.") ¶ 6, June 28, 2024, Docket No. 2352.) In early 2021, the government provided coordinating discovery counsel Russell Aoki with the "second round of rolling discovery" and noted in a summary spreadsheet that it had the devices from Crump's workplaces. (Government's Decl. Resp. Ct. Order ("Govt. Decl."), Exs. 1–2, Mar. 12, 2024, Docket No. 2240.) The government followed up with a letter to defense counsel several months later informing them that:

> [T]he government executed a number of search warrants on telemarketing call centers and other locations related to the charged schemes. During those searches, the government recovered both physical evidence and electronic evidence such as computers, cell phones, and thumb drives. Due to the large number of devices, the government has not copied all of the devices. Those electronic devices are available for inspection or copying upon request. Please let us know if you

> would like to inspect or receive copies any of these electronic devices.

(Govt. Decl., Ex. 3 at 2.)

Two years later, in July 2023, Crump took the government up on its offer and requested access to all digital evidence seized from RCHO. (Decl. Caitlinrose H. Fisher ("March Fisher Decl.") ¶¶ 22–25, Mar. 4, 2024, Docket No. 2231.) The government provided Crump with two discs that it said "contain the forensic images of the electronic devices seized from the RCHO office." (March Fisher Decl., Ex. E.)

A couple months later, and only a few weeks before trial, Crump followed up with the government. Because Crump was "concerned that not all information from the computers has been made available to us," she asked to "examine the computers seized during the search and for which we received forensic images." (March Fisher Decl., Ex. F at 3.) When the government asked for more details about the scope of Crump's proposed examination, she clarified that she was interested in a "limited" examination of "any computers seized from Readers Club Home Office." (March Fisher Decl., Ex. G at 2–3.) Crump wanted to see how files were arranged on the computers but did not "want to otherwise access, open, or examine the files, since it is our understanding that the contents of all files from the forensic examinations of the computers have already been provided to us." (*Id.* at 2.) The government responded that "once the computers are turned on and accessed, it's no longer a forensic review because it no longer maintains the original form and function as the time the device was seized." (*Id.*) The government

-3-

offered to pass along any "specific question[s]" to the FBI forensic team. (*Id.*) Crump ceased her efforts to obtain access to the computers at that point. (March Fisher Decl. ¶ 39.)

It would turn out that Crump's suspicion of incomplete disclosure was well-founded. The government does not dispute that the discs produced in July 2023 did not contain "the forensic images of the electronic devices, but rather the logical copies of the network drives of those devices that were on the discs." (Government's Resp. to Def.'s Reply at 5, July 23, 2024, Docket No. 2378.) As the Court understands it, this means that only contents stored on shared network drives were produced, while any content saved locally to the 21 devices was not. (*See* June Fisher Decl. ¶ 6; Tr. Vol. XI at 16–19, Nov. 11, 2023, Docket No. 2036.) Whatever the technological explanation, the bottom line is that of the more than 55,000 documents since recovered from the 21 devices, only around 3,000 were included in the July 2023 production. (*Id.* ¶ 7.)

The incomplete disclosure came to light during the third week of trial. (*See* Tr. Vol. XI at 16–19.) On Crump's motion, the Court found that the government's failure to timely produce the full contents of the RCHO devices violated Federal Rule of Criminal Procedure 16. *See United States v. Crump*, No. 20-232(31), 2023 WL 7115001, at *3 (D. Minn. Oct. 27, 2023). Although the Court concluded the government's July 2023 emails were "misleading," it did "not see any indication that the omission was a result of intentional gamesmanship rather than a mistake in a case that has produced an enormous amount

of evidence." *Id.* The Court forbade the government from introducing any inculpatory documents from the computers during the remainder of trial. *Id.*

In post-trial motions, Crump asked the Court to dismiss the charges against her because the government violated Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. (*See* Def.'s Mot. Dismissal or New Trial at 4–23, Jan. 4, 2024, Docket No. 2151.) The Court denied Crump's motions for post-trial relief as to all other arguments but allowed Crump additional time, funding, and briefing to fully develop her discovery and *Brady* arguments as she continued to review the documents from the computers. *See Miller*, 2024 WL 2218446, at *8. The Court also requested and received declarations detailing the scope and timing of Crump's requests and the government's productions of the RCHO devices. (*See* Order, Feb. 27, 2024, Docket No. 2218 at 2; March Fisher Decl.; Govt. Decl.)

## DISCUSSION

### I. STANDARD OF REVIEW

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Court has broad discretion to grant a new trial under Rule 33, but it must exercise that discretion sparingly. *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009).

Under *Brady*, a prosecutor may not withhold evidence that is favorable to a criminal defendant, whether that evidence is exculpatory or impeachment evidence. 373

U.S. at 87.  Likewise, Federal Rule of Criminal Procedure 16 imposes broad production requirements on the government, including relevant statements by the defendant and items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1).  To obtain post-trial relief based on a *Brady* violation, Crump must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to her; and (3) the evidence was material in that prejudice ensued.  *United States v. Haskell*, 468 F.3d 1064, 1075 (8th Cir. 2006).

## II.   ANALYSIS

The Court will find that the prosecution inadvertently suppressed favorable evidence.  Nonetheless, because Crump was not prejudiced by the incomplete production of the RCHO devices, the Court will deny her requests for post-trial relief.

### A.   Suppression

The government complied with its discovery and *Brady* obligations by making the devices available for inspection or copying but fell out of compliance when it produced incomplete copies.

*Brady* does not "include a requirement as to the manner of the disclosure." *See Odem v. Hopkins*, 192 F.3d 772, 777 (8th Cir. 1999).  So it was acceptable for the government to inform Crump in 2021 that the electronic devices were available for inspection or copying rather than proactively providing copies.  *See United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997), *overruled in part on other grounds by United States v. Est. of Parsons*, 367 F.3d 409 (5th Cir. 2004) (finding no *Brady* violation when the

prosecution made a 500,000 page cache of documents available for the defendant's inspection, even though the prosecution knew of exculpatory content within and did not direct the defense to it); *United States v. Pelullo*, 399 F.3d 197, 212–13 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("*Brady* and its progeny permit the government to make information within its control available for inspection by the defense."). Any suggestion that the government erred by failing to review the contents of the devices in its possession is incorrect. After all, "where potentially exculpatory information is available to the defendant through an exercise of due diligence, there is no suppression for the purposes of *Brady*." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010).

However, if the materials are not actually available for inspection, the Court may find those materials suppressed. The series of events in the summer of 2023 took the government out of compliance with its discovery and *Brady* obligations. Crump "exercise[d] due diligence" by asking for all electronic evidence seized from RCHO, *Skilling*, 554 F.3d at 576, and reasonably relied on the government's representations that it had fulfilled that request, *see Strickler v. Greene*, 527 U.S. 263, 284 (1999) ("[I]t was reasonable for trial counsel to rely on" the prosecutor's "implicit representation" that all exculpatory materials "would be included in the open files tendered to defense counsel for their examination."). When Crump later followed up to inspect the devices, the government backtracked on its offers to make them available. Although the FBI's

technological concerns may have been valid, it was the government's, not Crump's, obligation to find a workaround to its own obstacles.  The government asking Crump if she had specific questions about the devices was insufficient because Crump's initial emails made her concern clear: that the discs did not contain the full contents of the RCHO devices.  If the government wanted to fulfil its *Brady* obligations by providing copies or making the devices available, it had to either provide complete copies or truly make the devices available.  It did neither.

As it concluded before, the Court continues to believe this was a genuine mistake on the part of the government.  *Crump*, 2023 WL 7115001, at *3.  There does not appear to have been any malintent, as the prosecution was operating on a good faith belief that the two discs were complete copies of all digital evidence seized from RCHO.  When the government learned otherwise, it promptly notified Crump of its incomplete production.  But *Brady* asks, without mention of prosecutorial motives, only whether evidence was suppressed.  *See United States v. Agurs*, 427 U.S. 97, 110 (1976).  Accordingly, though the suppression was inadvertent, the Court finds that digital evidence seized from RCHO was suppressed.

### B.  Favorability

Crump directs the Court to numerous pieces of evidence from the RCHO devices.  Some are favorable, others less so.  The Court will only discuss a sampling of the evidence that provides enough to establish favorability and proceed to materiality and prejudice.

First, there is an email chain in which Crump purchases a lead list from Brian Cox. (June Fisher Decl., Ex. B.) She clarifies that "Brian [Williams] said we do not need the [credit card] or other info. We just need name, phone and address." (*Id.* at 3.) Williams's decision to forego the credit card information, Crump argues, sets RCHO apart from other fraudulent magazine companies. It would have been less obvious to her that she was working for a bad actor. And she fits less neatly into a scheme where, the government argued, telemarketers would often use credit card information to support claims of being a victim's current magazine subscriber.

Next Crump points to a text message from Brian Williams and edited spreadsheets to suggest that RCHO did not only target older or vulnerable victims. Brian Williams's text message, though a bit difficult to parse, appears to tell a lead broker that he does not disproportionately target the elderly.[1] Again, this message puts some distance between Crump's enterprises and the broader scheme, in which the government argued a hallmark was for telemarketers to target elderly victims. Crump also describes efforts, evidenced by edited spreadsheets, to scrub vulnerable and duplicate customers from lead lists. (June Fisher Decl. ¶ 13, Ex. C.)

Additionally, Crump's RCHO computer revealed that she had bookmarked the website "SBA Telemarketing Laws" and searched within her email and on the internet for

---

[1] The message reads "I've made 8 sales for 7500 if I sold all the old people they would be better but we don't it's like there leads somebody else doesn't want." (June Fisher Decl., Ex. H.)

compliance advice. (June Fisher Decl. ¶¶ 23–24.) The Court agrees that these searches are favorable evidence of good faith, if marginally so. As the Court noted, Crump repeatedly argued to the jury that her compliance efforts were evidence of good faith. *See Miller*, 2024 WL 2218446, at *4. But there was also evidence that "compliance firms were used as a would-be get out of jail free card, to give their operations a veneer of legitimacy." *Id.* Unlike the compliance firm, Crump would not expect to parade her internet history or bookmarks to probing regulators. They thus show an attempt to understand the bounds of the law without the taint of an ulterior "intent [] to provide cover." *Id.*

Because the Court finds there were favorable materials in the RCHO devices, it will proceed to the materiality inquiry for *Brady* relief.

C.   **Materiality**

Materiality is "evaluated in the context of the entire record."[2] *Agurs*, 427 U.S. at 112. Prejudice under *Brady* requires "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (quotation omitted). A reasonable

---

[2] In addition to the record from trial, the Court has carefully reviewed and considered all materials from the RCHO devices and Williams's personal devices that Crump included in her briefing, declarations, and exhibits. (*See* June Fisher Decl.; Def.'s Sur-Reply Mem., Aug. 13, 2024, Docket No. 2411.) Though the inquiry is holistic, the Court must inevitably focus on specific pieces of evidence within the record and will do so by primarily discussing the evidence it views as most favorable to Crump. Notwithstanding its narrower discussion, the Court reaches its conclusions based on its review of the entire supplemental record.

probability that the result of the proceeding would have been different "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," but is satisfied when the suppression "undermines confidence in the outcome of the trial." *Id.* at 434 (quotation omitted). The Court finds no such prejudice here.

The favorable evidence from the RCHO devices pales in comparison to the evidence of Crump's guilt introduced at trial. *See Miller*, 2024 WL 2218446, at *2, 4; *Agurs*, 427 U.S. at 112–13 ("If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial."). And the evidence from the RCHO devices, though somewhat favorable, is narrow and rebuttable. For example, as to the email declining credit card information, this was not a case about credit card fraud. To sustain a conviction, the government did not have to prove that Crump used ill-gotten credit card information to bill victims for the magazine subscriptions. It had to prove that she made materially false representations. And although the email undermines Crump's role in a scheme where the government contended part of the fraudsters' modus operandi was to use credit card information, Crump received other lead lists with credit card information. (*See, e.g.*, Gov't Trial Ex. F-60.)[3] Further, the email shows that Crump knew she was engaged with people who would

---

[3] So too for Williams's text about selling to the elderly. A single text message claiming not to target the elderly holds little weight when compared to the number of RCHO's elderly victims.

send off individuals' credit card information without hesitation. As to Crump's internet bookmarks and search history, the jury heard and still rejected Crump's frequent references to her compliance efforts, even if this evidence is somewhat different than her engagement of a compliance firm. *See Miller*, 2024 WL 2218446, at *4.

One final note. Although the Court weighs the inculpatory evidence the government introduced at trial, it will decline the prosecution's invitation to consider inculpatory evidence the government found in its later review of the RCHO devices. There is no *Brady* right for the prosecution. The time to introduce evidence from devices within its control was at trial. The Court thus reaches its conclusions as to materiality without considering whether the RCHO devices contained files that would have been detrimental to Crump's case had the government searched the devices before trial.

Because the Court remains confident in the jury's verdict and does not believe there was a reasonable probability of a different outcome had Crump been able to introduce materials from the RCHO devices, the Court will deny her motions for post-trial relief.[4]

---

[4] Although the Court's analysis has largely tracked the constitutional inquiry, it will deny relief under Federal Rule of Criminal Procedure 16 for similar reasons. The government was required under the Rule to turn over the RCHO devices but failed to fully do so. Nonetheless, because Crump sustained no prejudice, ordering a new trial or dismissing the indictment would not be "just under the circumstances." Fed. R. Crim. P. 16(d)(2)(D).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for New Trial or Dismissal [Docket No. 2151] is **DENIED**.

DATED: August 23, 2024                               _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                                  United States District Judge